YELVERTON, Judge.
We must decide if the trial judge correctly dismissed, on a summary judgment motion, Lillie Jones’(Jones) malpractice suit against the defendant, Dr. Charles Boustany (Dr. Boustany), because Jones failed to show that *482 Dr. Boustany’s alleged breach was an unresolved factual issue. We affirm.
JgFACTS
On May 30, 1991, Dr. Boustany, a cardiovascular surgeon, performed a single coronary artery bypass on Jones in Lafayette, Louisiana. The following day, after Jones had experienced some problems, Dr. Bousta-ny performed a second surgical procedure. Jones recovered from the surgery, and after discharging his patient on June 19, 1991, Dr. Boustany had no further contact with Jones. Jones subsequently received medical care from other doctors due to breathing problems.
At her home in California, Jones consulted Dr. Robert Lugliani, a pulmonary specialist, concerning shortness of breath. Dr. Lugliani treated Jones for chronic lung disease. This disease was unrelated to Jones’ coronary problems or her previous bypass surgery. Eventually, Dr. Lugliani discovered that Jones’ left diaphragm was paralyzed. In his deposition, Dr. Lugliani stated that this paralyzed diaphragm only aggravated Jones’ respiratory condition which was primarily caused by her lung disease. Dr. Lugliani stated that the paralyzed diaphragm was caused by a damaged phrenic nerve and opined that the damage to the nerve could have been caused by one of the following three events: (1) viral infection; (2) surgical procedure; or (3) chest injury. However, Dr. Lugliani did not speculate as to which one of the three events caused the damaged phrenic nerve; nor did he comment upon Jones’ previous bypass surgery or Dr. Bous-tany’s medical competence.
Alleging that Dr. Boustany negligently cut her phrenic nerve while performing bypass surgery, Jones submitted her malpractice claim to a medical review panel in accordance with La.R.S. 40:1299.47. On November 29, 1995, the medical preview panel rendered an opinion exonerating Dr. Boustany of any negligence in his treatment of Jones. Specifically, the panel made the following conclusions:
[Pjlaintiff has not proven that the defendant [Dr. Boustany] ... deviated from the standard of care which is required of health care providers, their staff and/or employees of the same specialty for the following reasons: Dr. Boustany met the standard of care pre-operatively, intraop-eratively and post-operatively. Appropriate consultation was obtained and followup care was adequate.
Phrenic nerve paralysis, if it occurred in this case, is a capricious and unforeseeable complication that cannot reliably be avoided by any known means or methodology.
In 1996, Jones filed suit against Dr. Bous-tany in state court. She alleged that her phrenic nerve, intact prior to the 1991 bypass surgery, was negligently damaged by the doctor during surgery.
Dr. Boustany subsequently filed a motion for summary judgment. To support his contention that no genuine issues of material fact existed, Dr. Boustany attached to his motion the following documents: 1) the medical review panel report with its conclusion favorable to Dr. Boustany; 2) an affidavit from Dr. Nagem, a cardiovascular surgeon and former member of the medical review panel, which stated that Dr. Boustany met the applicable standard of care; and 3) Jones’ answers to interrogatories revealing that Jones had not consulted or named a cardiovascular doctor to establish both the applicable standard of care and the resulting breach. (Dr. Lugliani is a pulmonary specialist, not a cardiovascular specialist.) Dr. Boustany essentially argued that Jones must present countervailing evidence from an expert, who practices in his speciality of cardiovascular medicine, in order to create a factual dispute regarding his alleged breach of the applicable standard of care.
Lin opposition to summary judgment, Jones presented the deposition from Dr. Lu-gliani to prove that her phrenic nerve had been damaged and that the damage could have resulted from her previous surgery. She submitted an affidavit and report from Dr. Higgins, a radiologist, to verify that x-rays taken before the 1991 surgery indicated a normal left diaphragm, but x-rays taken after the surgery indicated a paralyzed diaphragm.
The trial judge granted Dr. Boustany’s motion for summary judgment on July 15, *483 1996. In his written reasons for judgment, the trial judge gave the following conclusion:
The court finds that the affidavits and deposition of Dr. Robert Lugliani, presented by the plaintiff in opposition to the summary judgment, do not raise any genuine issues of material fact in regard to a breach of the applicable standard of care.
The court finds the plaintiffs evidence insufficient, particularly in light of the expert opinion by Dr. Edmund Nagem in favor of the defendant and the decision of the Medical Review Panel....
The court agrees with the defendant that Venable v. Dr. X and Dr. Y, 95-1634 (La.App.3 Cir.1996) [671 So.2d 1249] ... applies, and therefore, the affidavits supporting the summary judgment, similar to the affidavits in the Venable case, are sufficient to sustain the mover’s burden.
Arguing that unresolved facts still exist, Jones appealed the summary judgment. The many assignments of error listed in her brief are reducible to two main arguments: 1) the trial judge improperly weighed the conflicting evidence in contravention of case law which holds that judges are not to weigh conflicting evidence on summary judgment motions, and 2) in opposition to Dr. Bousta-ny’s evidence, the trial judge incorrectly required Jones to present expert evidence concerning Dr. Boustany’s alleged breach of the standard of care applicable to his ^specialty, cardiovascular surgery. In other words, common sense informs us that a breach has occurred when a cardiovascular surgeon cuts the phrenic nerve during bypass surgery. Hence, no expert is needed to make that determination for us since the doctrine of res ipsa loquitur (literally, “the thing speaks for itself’) is applicable.
OPINION
The appellate court’s review of summary judgments is de novo. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730. Summary judgment is appropriate only when the mover establishes that no genuine issue as to material fact exists and the mover is entitled to judgment as a matter of law. Id.; La.Code Civ.P. art. 966. A material fact is one that “potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the relevant dispute.” Dinger v. Shea, 96-448 (La.App. 3 Cir. 12/11/96); 685 So.2d 485. Once the moving party presents supporting documents resolving all material factual issues, then the burden shifts to the non-moving party to prove the existence of a genuine issue of material fact. La.Code Civ.P. art. 966. For the reasons explained below, we conclude that summary judgment was proper because, once the burden shifted to Jones as the non-mover, she failed to prove that Dr. Boustany’s alleged breach was an unresolved factual issue.
The plaintiff, in order to prevail in a malpractice suit, must establish three facts:. 1) the standard of care applicable to the defendant physician; 2) the breach by the physician of that standard of care; and 3) a causal connection between that breach and the plaintiffs injury. Pfiffner v. Correa, 94-924, 94-963, 94-992 (La.10/17/94); 643 So.2d 1228; La.R.S. 9:2794. When a physician, like Dr. Boustany, is a specialist then the plaintiff “has the burden of proving the degree of care, ordinarily practiced by physicians ... within the involved medical specialty.” La. R.S. 9:2794(A)(1).
The resolution of the present case turns on whether Jones can show that Dr. Bousta-ny’s alleged breach is an unresolved, open factual issue. Dr. Boustany, as the mover for summary judgment, had the initial burden. He presented the medical review panel report and the affidavit from Dr. Nagem stating that Dr. Boustany did not breach the applicable standard of care for a cardiovascular surgeon even if he did damage Jones’ phrenic nerve during bypass surgery. It is true, as Jones argues, that both documents submitted by Dr. Boustany, the panel report and Dr. Nagem’s affidavit, were mere conclusions, without much explanation or a description of the applicable standard of care. Nevertheless, we must conclude that Dr. Boustany has met his initial burden. Dr. Nagem and the other physicians on the review panel, as cardiovascular surgeons, are in the same speciality as Dr. Boustany; they reviewed the evidence and made a decision that we are not in a position to doubt.
*484 Our conclusion today is in accord with this court’s conclusion in Venable v. Dr. X, 96-1634 (La.App. 3 Cir. 4/3/96); 671 So.2d 1249. In Venaible, this court affirmed a summary judgment that dismissed the plaintiffs malpractice suit. The plaintiff alleged that her doctor, a specialist in obstetrics and gynecology, had breached the standard of care applicable to his specialty when the plaintiff became addicted to medication prescribed by the doctor. Significantly, the doctor in Vena-ble presented the following three documents in support of summary judgment: 1) the medical review panel report with favorable conclusions; 2) the plaintiffs.answers to interrogatories 17which did not name an expert to testify regarding breach and the applicable standard of care; and 3) the affidavit of a doctor, who was a member of the medical review panel and practiced in the same specialty, stating that the doctor had not breached the standard of care. Based on these three documents, the Venable court concluded that the doctor had met his initial burden and granted his summary judgment motion. Likewise, we conclude that Dr. Boustany, whose three documents in support of summary judgment were almost identical to those submitted by the Vencible doctor, has met his initial burden.
With the burden thus shifted to Jones to prove the existence of a material fact, she presented Dr. Lugliani’s deposition and the affidavit of Dr. Higgins, a radiologist. Both of these documents tend to prove that Jones’ phrenic nerve was damaged by Dr. Boustany during surgery. However, Jones has missed the crucial point in this case: Dr. Boustany can (and apparently does) concede .that he somehow damaged Jones’ phrenic nerve during bypass surgery; yet to prevail in her suit, Jones must also establish that Dr. Bous-tany actually breached the standard of care applicable to cardiovascular surgeons when he cut the phrenic nerve. With breach as an essential element of her suit, Jones must submit evidence directly addressing this element if her claim is to survive the summary judgment motion. Dr. Boustany presented evidence that he committed no breach even if he did damage the nerve; yet, Jones has presented absolutely no evidence indicating that Dr. Boustany’s alleged act was a breach. Thus, this material fact, Dr. Boustany’s breach, has been resolved in Dr. Boustany’s favor.
We think Jones’ reliance upon the doctrine of res ipsa loquitur is misplaced. We agree that in some rare cases the plaintiff need not present any expert 18evidence concerning the doctor’s breach, for common sense tells us a breach has occurred when, for example, a doctor amputates the wrong limb. However, in the present ease, this court, lacking medical expertise, cannot discern whether cutting the phrenic nerve during bypass surgery is an uncommon occurrence that ordinarily would not occur in the absence of negligence. Most of us who are not medical experts do not know what and where this nerve is, much less its vulnerability during bypass surgery. Hence, expert testimony is necessary in the present case. See White v. McCool, 396 So.2d 774 (La.1981). The supreme court held that res ipsa loquitur was inapplicable in that malpractice case. The facts of that case are similar to the present ease in that the plaintiff presented no expert testimony establishing the applicable standard of care or the doctor’s breach in suturing a liver that continued to bleed. The following quote from that opinion sums up the court’s reasoning which aptly applies to our present case: “Had the facts been more self evident (i.e., a surgical instrument being left in the abdomen) or had there been produced expert or other evidence suggesting, for instance, that a sutured liver doesn’t bleed absent improper suturing or improper suturing technique (the latter being something that this Court cannot divine) our conclusion would be different.” Id. at 777.
We also find no merit in Jones’ argument that the trial judge granted the summary judgment by improperly weighing the conflicting evidence. As discussed above, no conflicting evidence on the subject of breach even existed for the judge to weigh, since Jones submitted no evidence on that issue. In his reasons for judgment, |9the trial judge clearly stated that Dr. Boustany met his initial burden and that Jones failed to prove any unresolved material fact remained. We agree.
*485 For the foregoing reasons, the judgment is affirmed at appellant’s costs.
AFFIRMED.
SAUNDERS, J., dissents.